FILED
U.S. DISTRICT COURT

2012 JAN 13  A 11: 26

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

MARY C. CORPORON (USB No. 734)
MARK A. FLORES (USB No. 8429)
**VAN COTT, BAGLEY, CORNWALL
& MCCARTHY**
36 South State Street
Suite 1900
Salt Lake City, Utah 84111
Telephone: 801-532-3333
Facsimile: 801-532-0058
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NATALIE MARIE STEVENSON, mother, personal representative and heir to LINDSEY GOGGIN, deceased, and THE ESTATE OF LINDSEY GOGGIN, by her Personal Representative Natalie Stevenson, : : : : : : | **PLAINTIFF'S COMPLAINT AND JURY DEMAND** |
| Plaintiffa, : : | |
| -vs- : : | |
| SALT LAKE COUNTY, a subdivision of the State of Utah; JAMES M. WINDER; individually and in his capacity as Salt Lake County Sheriff; ROLLIN COOK, individually and in his capacity as the Salt Lake County Jail Commander; WELLCON INC., a corporation; WELLCON, LLC, limited liability company; RUSSELL VINIK, MD, individually and in his capacity as a Salt Lake County employee; CAROL KELSCH, individually and in her capacity as a Salt Lake County employee; ERIC LINDLEY, MD, : : : : : : : : : : : : : : : | Case: 2:12cv00044 Assigned To : Warner, Paul M. Assign. Date : 1/13/2012 Description: Stevenson et al v. Salt Lake County et al |

individually and in his capacity as a Salt
Lake County employee; JULIE EVANS,
R.N., individually and in her capacity as
a Salt Lake County employee;
ELIZABETH HARDY, R.N.,
individually and in her capacity as a Salt
Lake County employee; KRISTYN
SMITH, R.N., individually and in her
capacity as a Salt Lake County
employee; TODD R. WILCOX, M.D.,
individually and in his capacity as a Salt
Lake County employee; JOHN DOES 1-
10, individually and in their capacity as
Salt Lake County employees and or
employees of Wellcon, Inc, or Wellcon,
LLC.

      Defendants.

COME NOW Plaintiffs NATALIE STEVENSON, mother and heir of Lindsey Denise Hayes-
Goggin (deceased) and the ESTATE OF LINDSEY DENISE Hayes-GOGGIN, through the personal
representative of the estate, Natalie Stevenson, and complain against Defendants as follows:

## PARTIES

1.    Plaintiff, **Natalie Marie Stevenson,** is a citizen of the United States and a resident

of the State of Utah.  Plaintiff Natalie Stevenson is the mother and heir of Lindsey Denise Hayes-

Goggin, ("Lindsey"), and the personal representative of the Estate of Lindsey Goggin.

2.    **The Estate of Lindsey Denise Hayes- Goggin,** is a plaintiff in this matter, by and

through the personal representative of the estate, Natalie Marie Stevenson.

3.     **Dennis Michael Goggin** is the natural father and heir of Lindsey Denise Hayes-Goggin, entitled to all notice and all rights of heirship in these proceedings, in the like manner as Natalie Marie Stevenson.

4.     Defendant, **Salt Lake County,** is a county of the State of Utah organized and existing pursuant to Utah law, and as such, is a political subdivision of the State of Utah. At all times relevant herein, Salt Lake County was the owner, operator and/or administrator of the Salt Lake County Jail, aka Salt Lake County Adult Detention Center (hereinafter "Jail"). Salt Lake County and its agents are state actors as defined by 42 U.S.C. §1983, and are responsible for the day -to- day operations of the Jail, the adoption and implementation of Jail policy, and the training and supervision of Jail employees, including contract employees. Salt Lake County was further responsible for providing reasonable and necessary medical services to pretrial detainees and inmates housed in the Jail, including the diagnosis and treatment of medical conditions exhibited by pretrial detainees and Jail inmates, who by the virtue of their detention are prohibited from seeking and obtaining independent medical treatment. Plaintiffs are suing Salt Lake County in its official capacity for its deliberate indifference to the medical needs of Lindsey, resulting in her death from severe dehydration.

5.     Defendant **James M. Winder**, at all relevant times herein, was the elected County Sheriff for Salt Lake County, with duties prescribed by statute, including operational oversight, management and supervision of the Jail, its employees, and all independent contractors working in the Jail. As relevant to this case, Sheriff Winder had the responsibility to manage, create policy for,

and administer such policy at the Jail, including supervising and training employees, contractors, and all other individuals who attend to the medical needs of pretrial detainees and inmates housed at the Jail. Plaintiffs are suing Sheriff Winder in his individual and official capacities for Lindsey's death from severe dehydration while housed in the Jail.

6.       Defendant **Rollin Cook,** at all relevant times herein, was the Salt Lake County Jail Commander, whose duties included operational oversight, management and supervision of the Jail, its employees, and all independent contractors working in the Jail.  As relevant to this case, Commander Cook  had the responsibility to manage, create policy for, and administer such policy at the Jail, including supervising and training employees, contractors, and all other individuals who attend to the medical needs of pretrial detainees and inmates housed at the Jail. Plaintiffs are suing Commander Cook in his individual and official capacities for Lindsey's death from severe dehydration while housed in the Jail.

7.       Defendant **Wellcon, Inc.** ("Wellcon") is a correctional and institutional healthcare provider serving the Jail.  At all times relevant herein, Wellcon was under contract with  Salt Lake County and was responsible for supplying, administering, and training employees and contractors to provide medical services to pretrial detainees and inmates housed in the Jail, including diagnosis and treatment of inmate medical conditions.  Plaintiffs are suing Wellcon in its individual, official, and corporate capacities, and in its capacity as a principle for the negligent and otherwise wrongful acts of its employees and agents.

8.       Defendant **Wellcon, LLC.** ("Wellcon LLC") is a correctional and institutional

healthcare provider serving the Jail. At all times relevant herein, Wellcon LLC was under contract with Salt Lake County and was responsible for supplying, administering, and training employees and contractors to provide medical services to pretrial detainees and inmates housed in the Jail, including the diagnosis and treatment of inmate medical decisions. Plaintiffs are suing Wellcon LLC in its individual, official, and corporate capacities, and in its capacity as a principle for the negligent and otherwise wrongful acts of its employees and agents.

9.      At all times relevant herein, Defendants Wellcon and Wellcon, LLC, pursuant to contracts with Salt Lake County, were acting as a agents of Salt Lake County, and as such, they and their employees were "state actors" as defined by 42 U.S.C. §1983.

10.     Defendant **Russell Vinik, M.D.** ("Vinik"), at all times relevant herein, was a medical doctor employed by, or under contract with, Defendant Wellcon, Defendant Wellcon, LLC, and/or Salt Lake County. Dr. Vinik's employment and professional responsibilities included providing medical services, including diagnosis and treatment, to pretrial detainees and inmates housed in the Jail, and further executed his duties in accordance with the policies of Wellcon, Wellcon LLC, and/or Salt Lake County, the Salt Lake County Sheriff's Department and the Jail. Plaintiffs are suing Dr. Vinik in both his individual capacity and as an agent of Wellcon, Wellcon LLC, and or Salt Lake County, his deliberate indifference having caused the death of Lindsey. At all times relevant herein, Vinik was a "state actor" as defined by 42 U.S.C. §1983.

11.     Defendant **Carol Kelsch, R.N.** ("Kelsch"), at all times relevant herein, was a registered nurse employed by, or under contract with, Wellcon, Wellcon LLC, and/ or Salt Lake

County. Kelsch's employee and professional responsibilities included providing medical services to pretrial detainees and inmates housed in the Jail, and she executed her duties in accordance with the polices of Wellcon, Wellcon, LLC, and/or Salt Lake County, the Salt Lake County Sheriff's Department, and the Jail. Plaintiffs are suing Carol Kelsch, R.N., in both her individual capacity and as an agent of Wellcon and or Salt Lake County, her deliberate indifference having caused the death of Lindsey. At all times relevant herein, Kelsch was a "state actor" as defined by 42 U.S.C. §1983.

12.     Defendant **Eric Lindley, M.D.** ("Lindley"), at all times relevant herein, was a medical doctor employed by, or under contract with, Wellcon, Wellcon LLC, and/or Salt Lake County. Dr. Lindley's responsibilities included providing medical services, including diagnoses and treatment, to pretrial detainees and inmates housed in the Jail and he executed his duties in accordance with the policies of Wellcon, Wellcon LLC, and Salt Lake County, the Salt Lake County Sheriff's Department, and the Jail. Plaintiffs are suing Dr. Lindley in both his individual capacity and as an agent of Wellcon, Wellcon LLC, and/or Salt Lake County, his deliberate indifference having caused the death of Lindsey. At all times relevant herein, Lindley was a "state actor" as defined by 42 U.S.C. §1983.

13.     Defendant **Julie Evans, R.N.** ("Evans"), at all times relevant herein, was a registered nurse employed by, or under contract with, Wellcon, Wellcon LLC, and/or Salt Lake County. Julie Evans' responsibilities included providing medical services to pretrial detainees and inmates housed in the Jail and she executed her duties in accordance with the policies of Wellcon, Wellcon LLC, and

or Salt Lake County, Salt Lake County Sheriff's Department, and the Jail. Plaintiffs are suing Julie Evans, R.N., in both her individual capacity and as an agent of Wellcon, Wellcon LLC, and/or Salt Lake County, her deliberate indifference having caused the death of Lindsey. At all times relevant herein, Evans was a "state actor" as defined by 42 U.S.C. §1983.

14.    Defendant **Elizabeth Hardy, R.N.** ("Hardy"), at all times relevant herein, was a registered nurse employed by, or under contract with, Wellcon, Wellcon, LLC, and/or Salt Lake County. Elizabeth Hardy's responsibilities included providing medical services to pretrial detainees and inmates housed in the Jail and she executed her duties in accordance with the policies of Wellcon, Wellcon LLC, and or Salt Lake County, Salt Lake County Sheriff's Department, and the Jail. Plaintiffs are suing Elizabeth Hardy, R.N., in both her individual capacity and as an agent of Wellcon, Wellcon LLC, and/or Salt Lake County, her deliberate indifference having caused the death of Lindsey. At all times relevant herein, Hardy was a "state actor" as defined by 42 U.S.C. §1983.

15.    Defendant **Kristyn Smith, R.N.** ("Smith"), at all times relevant herein, was a registered nurse employed by, or under contract with Wellcon, Wellcon LLC, and/or Salt Lake County. Kristyn Smith's responsibilities included providing medical services to pretrial detainees and inmates housed in the Jail and she executed her duties in accordance with the policies of Wellcon, Wellcon, LLC, and/or Salt Lake County, Salt Lake County Sheriff's Department, and the Jail. Plaintiffs are suing Kristyn Smith, R.N., in both her individual capacity and as an agent of Wellcon, Wellcon LLC, and or Salt Lake County, her deliberate indifference having caused the

death of Lindsey. At all times relevant herein, Smith was a "state actor" as defined by 42 U.S.C. §1983.

16.     Defendant **Todd Wilcox, M.D.** ("Wilcox"), at all times relevant herein, was a medical doctor employed by, or under contract with Wellcon, Wellcon LLC, and/or Salt Lake County, with the responsibility to provide medical services, including diagnosis and treatment, to pretrial detainees and inmates housed in the Jail, and he further executed his duties in accordance with the policies of Wellcon, Wellcon LLC, and Salt Lake County, the Salt Lake County Sheriff's Department and the Jail. Plaintiffs are suing Dr. Wilcox in both his individual capacity and as an agent of Wellcon, Wellcon LLC, and/or Salt Lake County, his deliberate indifference having caused the death of Lindsey. At all times relevant herein, Wilcox was a "state actor" as defined by 42 U.S.C. §1983.

17.     The true identities and capacities of Defendants **John Does 1-15** are unknown to Plaintiffs but it is believed the unknown defendants are medical doctors and registered nurses employed by, or under contract with Wellcon, Wellcon LLC, and/or Salt Lake County, and/or law enforcement personal employed by, or under contract with, Salt Lake County. The responsibilities of John Does 1-15 included providing medical services and ensuring the protection of and promoting of health, safety and welfare of individuals incarcerated in the Salt Lake County Jail, including pretrial detainees like Lindsey.

## Jurisdiction

18.     This action arises under the United States Constitution and federal law, and

particularly under the provisions of the Eighth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. §§1983 and 1988.

19. This action seeks redress for violations of the civil rights laws of the United States and jurisdiction is therefore invoked pursuant to 28 U.S.C. §1343 and 42 U.S.C. §1983.

20. Plaintiff's invoke the court's supplemental jurisdiction over their state law claims against defendants pursuant to 28 U.S.C. §1367, as Plaintiffs' claims arise from violations of Lindsey's due process rights, and her right to be free from "unnecessary rigor" as guaranteed by Article I, §§7 and 9 of the Utah Constitution.

21. Plaintiffs' claims arise from acts occurring in Salt Lake County, State of Utah, and venue is proper under 28 U.S.C. §1391 and 28 U.S.C. §1331.

22. The Court has authority to award costs and attorney fees pursuant to 42 U.S.C. § 1983.

## Factual Allegations

23. Lindsey was 25 years old at the time of her death.

24. On August 11, 2010, Lindsey was booked into the Jail on an arrest warrant.

25. During the booking process, Lindsey underwent a comprehensive nurse examination, during which time Lindsey informed Jail medical staff that she had a history of drug use, and that she had been using 2 grams of heroin a day, for a period immediately prior to her arrest.

26. The Comprehensive Nurse Examination chart completed by Jail medical staff identified Lindsey as a positive risk for withdrawal from heroin.

27.     Lindsey also underwent a comprehensive mental health screening by Jail medical staff.

28.     The Comprehensive Mental Health Screening Chart completed by Jail medical staff noted that Lindsey had a history of drug addiction, specifically to cocaine and heroin, and she was a positive risk factor for withdrawal.

29.     After booking, Lindsey was placed in quarantine for two days, during which time she suffered from severe nausea and vomiting due to heroin withdraw.

30.     In response to Lindsey's severe vomiting, Jail medical staff began providing her Gatorade on August 12, 2010.

31.     On August 13, 2011, Lindsey completed a Sick Call Request Form in which she complained, "I can't breath. I am throwing up and my heart is beating out of my chest."

32.     In the Nursing Assessment section of the Sick Call Request Form, a nurse noted that Lindsey had reported using heroin and that she was "not able to keep anything down," and the nurse also made a notation that she would schedule Lindsey to see a doctor.

33.     Despite her severe vomiting and inability to keep anything down, Lindsey was moved out of quarantine and into a general population cell with another inmate.

34.     On August 13, 2010, Defendant Kristyn Smith, R.N., completed a Nurse Progress Note, wherein she noted, "inmate complaining of difficulty breathing from heroin withdraw. When nurse arrived inmate was sitting on the floor of her cell. She stated she had been vomiting all day and now nothing was left but bile."

35.     In her progress note, Smith also indicated she notified Defendant Russell Vink, M.D., and that he prescribed Lindsey the anti-nausea medication, Phenergan.

36.     Lindsey's cell-mate reported to Defendants, however,  that Lindsey continued vomiting every 15 minutes and that she was unable to eat anything substantive and was subsisting exclusively on Gatorade.

37.     The Withdrawal Worksheet prepared by Jail medical staff, and used to monitor Lindsey, indicated  that, by the afternoon of August 12, 2010, Lindsey was suffering from nausea and vomiting, with it worsening by August 13, 2010.

38.     In the early morning hours of August 15, 2010, Lindsey completed another Sick Call Request Form stating, "I still can't eat or drink anything without violently throwing up. I don't have the same heart problem but it still feels faster than it should."

39.     Jail medical staff responded to Lindsey's request for assistance by again providing her Gatorade.

40.     Later on August 15, 2010, Defendant Dr. Vink admitted Lindsey into the Jail's Acute Medical Unit.

41.     According to MCIRT officer's report, Lindsey walked without assistance from her cell at Bravo pod to the Acute Medical Unit. Upon arrival into the AMU, Lindsey was escorted into a holding cell and staff placed Lindsey on the floor.

42.     The medical doctors left Lindsey unattended and continued their rounds. Sometime later a nurse asked to enter Lindsey's cell to check her vital signs. Lindsey was found on her cell

floor.  She was not breathing.

43.     Jail medical staff attempted to administer CPR, including chest compressions for approximately 23 minutes.  They did not immediately call for emergency transportation, Lindsey was transferred to St. Mark's Hospital where she was pronounced dead.

44.     The Utah Medical Examiner determined that Lindsey's cause of death was severe dehydration due to prolonged vomiting episodes following heroin withdrawal.

45.     Lindsey died after approximately five days in custody.

46.     Despite her persistent and severe vomiting over that five day period, and Defendants' knowledge that she was suffering heroin withdrawal and severe vomiting, Defendants failed to intervene and failed to provide reasonable and necessary medical assistance to Lindsey.

47.     Plaintiffs and her heirs enjoyed a close relationship with Lindsey, and her death has deprived them of the close society and companionship they previously enjoyed with Lindsey.

48.     "The constitutional protections against deliberate indifference to a prisoner's serious medical needs ... applies to pretrial detainees through the due process clause of the Fourteenth Amendment. *Garcia v. Salt Lake County,* 768 F.2d 303, 307 (10th Cir. 1985)" *Howard v. Dickerson,* 34 F.3d 978 (10th Cir. 1994).

### FIRST CLAIM FOR RELIEF

**Against All Defendants In Their Individual and Official Capacities, For
Violation of the Eighth and Fourteenth Amendments to the United States
Constitution, Cognizable Under 42 U.S.C. § 1983**

49.     Plaintiffs hereby incorporate by reference paragraphs 1 through 48 as though fully set

forth herein.

      50.    Defendants had at least the following duties:

          a.    to see that measures were in place to reasonably ensure the safety of inmates and pretrial detainees at the jail, including the safety of Lindsey Goggin;

          b.    to implement such measures as would reasonably ensure the safety of inmates and pretrial detainees, including the safety of Lindsey Goggin;

          c.    to see that measures were in place to reasonably ensure that inmates and pretrial detainees, including Lindsey Goggin, were provided a level of health care that a civilized society would think necessary;

          d.    to reasonably ensure that inmates and pretrial detainees like Lindsey Goggin did not die of severe dehydration while in the custody and care of Defendants.

      51.    Defendants breached these duties and were deliberately indifferent to Lindsey Goggin's needs in at least the following particulars;

          a.    by allowing Lindsey Goggin to die of dehydration while in custody at the Jail;

          b.    by failing to have polices and procedures in place, and/or by failing to adequately supervise or train employees and contractors in accordance with said polices and procedures, and/or by failing to enforce such policies and procedures so as to ensure the medical safety of pretrial detainees and inmates such as Lindsey Goggin.

          c.    by failing to have polices and procedures in place, and/or by failing to

adequately supervise or train employees and contractors in accordance with said policies, and/or by failing to enforce to such policies and procedures intended to ensure that pretrial detainees and inmates like Lindsey Goggin were provided a level of heath care that a civilized society would think necessary;

d.      by failing to have polices and procedures in place and/or by failing to adequately supervise and/or train employees and contractors in accordance with said policies, and/or by failing to implement to such policies and procedures intended to ensure the reasonable safety and health of inmates and pretrial detainees  suffering withdrawal from controlled substances such as Lindsey Goggin; and

e.      by failing to intervene in a medically reasonable way to prevent Lindsey Goggin's death.

52.      Repeatedly over the five day period, Defendants were deliberately indifferent to Lindsey Goggin's medical needs.  The policies and procedures developed and administered said Defendants were deficient and deliberately indifferent to foreseeable circumstances, such as an inmate or pretrial detainee suffering severe vomiting and resulting dehydration during heroin withdrawal, such as suffered by Lindsey Goggin.

53.      As a direct and proximate result of Defendants' deliberate indifference, Lindsey Goggin died while in custody from severe dehydration.

54.     Given that Defendants knew that Lindsey Goggin was suffering from heroin withdrawal and severe and persistent vomiting over her five day incarceration, and that she was unable to eat or drink so that she was vomiting only bile, Lindsey Goggin's death was manifestly foreseeable.

55.     Indeed it was manifestly foreseeable days before the death that Lindsey was caused to endure pain and suffering leading up to the time of her death, even though her condition could have been stabilized.  Accordingly, the Estate of Lindsey Goggin seeks compensation in an amount to be determined at trial for the pain and suffering Lindsey Goggin endured prior to her death, as well as economic damages, including lost future earnings as allowed by law.

56.     Plaintiff Natalie Stevenson, and heir of her deceased daughter Lindsey Goggin, seeks further compensatory damages for loss of society and companionship in an amount to be determined at trial.

57.     Further, due to the egregious nature of Defendants' deliberate indifference and reckless disregard for the health, safety, and the very life of Lindsey Goggin, Plaintiffs seek punitive damages against said Defendants as may be allowed by law.  Further, Plaintiff's are entitled to attorney fees pursuant to 42 U.S.C. §1988

## SECOND CLAIM FOR RELIEF

### Failure to Train and/or Supervise
### Against Sheriff Winder, Salt Lake County, Wellcon, Inc., and Wellcon, LLC
### For Violation of The Eighth and/or Fourteenth Amendments, Cognizable
### Under 42 U.S.C. §1983

58.     Plaintiffs here incorporate by reference paragraphs 1 through 57 as though fully set forth herein.

59.     Salt Lake County, Wellcon, Inc, and Wellcon, LLC, are considered persons under 42 U.S.C. §1983, and thus may be liable for causing a constitutional deprivation.

60.     Sheriff Winder, Salt Lake County, Wellcon, and Wellcon officials may be held liable for damages for constitutional wrongs caused by their failure to adequately train or supervise their subordinates due to their deliberate indifference.

61.     These defendants foresaw, or should have foreseen, the possibility that, when certain inmates and pretrial detainees are taken into custody, they would suffer withdrawal from controlled substances, including heroin, resulting in serious medical conditions for those inmates and pretrial detainees.  Yet Defendants failed to provide adequate policies, procedures, or training to their employees or contractors to reasonably provide for the health and safety of inmates or pretrial detainees suffering from withdrawal from controlled substances.  In this, the Defendants were deliberately indifferent to the health and safety of Lindsey Goggin, and their deliberate indifference caused her death.

62.     These Defendants, in their individual and official capacities, failed to provide

adequate policies, procedures, or training to their employees or contractors they failed to instruct and direct them to adequately monitor and respond to inmates and pretrial detainees suffering from withdrawal from controlled substances, including heroin, leading to serious and manifestly life-threatening medical conditions. In this, the Defendants were deliberately indifferent to the health and safety of Lindsey Goggin, and their deliberate indifference caused her death.

63.     As a direct and proximate result of these Defendants' actions, inactions, and/or deliberate indifference, Lindsey Goggin was deprived of her life without due process of law in violation of rights as guaranteed by the Eight and Fourteenth Amendments of the United States Constitution.

64.     The violation of Lindsey Goggin's rights are actionable under 42 U.S.C. §1983, and Plaintiffs are entitled to judgment against Defendants in an amount to be determined at trial.

65.     Plaintiffs are further entitled to attorney's fees and costs against Defendants under 42 U.S.C. §1988.

66.     Plaintiffs are entitled to general and special damages, as well as punitive damages, as may be allowed by law, due to the Defendants' willful, wanton, and grossly reckless conduct.

### THIRD CLAIM FOR RELIEF

**Unlawful Custom, Policy or Practice - Laxity**
**Against All Defendants in Violation of the Eighth and/or Fourteenth Amendments,**
**Cognizable Under 42 U.S.C. §1983**

67.     Plaintiffs here incorporate by reference paragraphs 1 through 66 as though fully set forth herein.

68.     Defendants' actions occurred under the color and pretense of Utah State law, and in Defendants' official and individual capacities.

69.     If a governmental agency or agent thereof has a policy, custom or practice that tolerates the commission of unconstitutional acts by its officers and/or employees, then the agency and/or the employees or contractors who are in a position to set the policy, custom, or practice, may be held liable directly for the consequences of any unconstitutional acts by said persons.

70.     The Salt Lake County corrections officers and employees, Doe Officers 1-15, were deliberately indifferent and failed to notice and/or intercede to save Lindsey Goggin from death, even though Lindsey Goggin was clearly in dire need of medical assistance. The Defendants' conduct, through those officers and employees, evidenced a custom of laxity regarding the supervision and monitoring of the health and safety of inmates and pretrial detainees, so that such custom was or became a de facto official policy. Fact discovery will bear out and provide further support of such policy, custom, or practice. Defendants, by allowing such a policy, custom, or practice to develop and exist, exhibited deliberate indifference to the rights, health, and safety of Lindsey Goggin.

71.     As a direct and proximate result of this custom of laxity, Lindsey Goggin endured pain and suffering, and was deprived of her life without due process of law, in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

72.     Defendants' depravation of Lindsey Goggin's rights are actionable under 42 U.S.C. §1983.

73.     Plaintiffs are entitled to judgment against these Defendants for damages, including

general, special and punitive damages, in an amount to be proven at trial as may be allowed by law.

74.     Plaintiffs are further entitled to attorney's fees and cost against Defendants under 42

U.S.C. §§1983 and 1988.

## FOURTH CLAIM FOR RELIEF

### Against All Defendants For Violations of the Constitution of the State of Utah
### Article I, Sections 7 & 9

75.     Plaintiffs here incorporate by reference paragraphs 1 through 74 as though fully set

forth herein.

76.     The Utah Constitution Article I, Section 7 states:

"No person shall be deprived of life, liberty or property without due process of law . . ."

Article I, Section 9 states in relevant part:

"Nor shall cruel and usual punishments be inflicted.  Persons arrested or imprisoned shall not

be treated with unnecessary rigor."

77.     The notice provision of the Utah Governmental Immunity Act, as delineated in Utah

Code Ann. §63G-7-401(2), does not apply to Plaintiffs' state constitutional claims because such

claims are self executing.

78.     A Utah State constitutional provision is self executing:

. . . if it articulates a rule sufficient to give effect to the underlying rights and duties
intended by the framers.  In other words, courts may give effect to a provision
without implementing legislation if the framers intended the provision to have
immediate effect and if "no ancillary legislation is necessary to the enjoyment of a

right given, or the enforcement of a duty imposed . . ."

79.     Lindsey Goggin suffered a flagrant violation of her rights, under the Utah Constitution, when Defendants allowed her to suffer over five days and to die from severe dehydration without medical care while in custody.

80.     Existing remedies do not redress the injuries and death of Lindsey Goggin or her estate, nor do they redress the injuries and damages suffered by her mother, Natalie Stevenson.

81.     Equitable relief was and is wholly inadequate to redress the injuries and damages to Plaintiffs.

82.     Defendants knew that Lindsey Goggin was suffering heroin withdrawal, that she was suffering from persistent vomiting and diarrhea, that she was unable to keep down any food or water, and that a person's inability to keep down water will lead to dehydration and death in a matter of days.

83.     During Lindsey Goggin's incarceration in the Jail, the Defendants showed a shocking degree of deliberate indifference and reckless disregard for the serious medical needs of Lindsey Goggin.

84.     As a direct and proximate result of Defendants' deliberate indifference and reckless disregard, Lindsey Goggin died from severe dehydration while in the custody of Defendants, and her death was manifestly foreseeable.

85.     Lindsey was caused to endure pain and suffering leading up to her untimely death, even though her condition could have been stabilized.  Accordingly, Plaintiffs seek general and

C:\ndEcho\Complaint Jury Demand final.wpd/tdb

special damages, in an amount to be proven at trial, including compensation for the suffering endured by Lindsey Goggin prior to her death.

86.     Plaintiff Natalie Stevenson, as heir of her deceased daughter Lindsey Goggin, seeks further compensatory damages for the loss of society and companionship of her child, in an amount to be proven at trial.

87.     Further, Plaintiffs seek punitive damages against Defendants as may be allowed by law.

## JURY DEMAND

Plaintiffs request a jury trial on all issues in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1.     For general and compensatory damages in an amount to be proven at trial;

2.     For damages for the pain and suffering endured by Lindsey Goggin prior to her death, in an amount to be proven at trial;

3.     For punitive damages as may be allowed by law;

4.     For pre-judgment interest on damages assessed by the verdict of the jury, as may be allowed by law;

5.     For Plaintiffs' costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. §§ 1983 and 1988; and

6.     For such further relief as may be deemed just and proper by the court.

DATED this _____ day of January, 2012.

VAN COTT, BAGLEY, CORNWALL & MCCARTHY

_____
MARY C. CORPORON
Attorney for Plaintiff

ND: 4825-8420-8653, v. 1